# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA LAURINO, et al., | Case No. 1:18-cv-00636-LJO-SAB |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO MODIFY THE SCHEDULING ORDER |
| v. | |
| UNITED STATES, | ORDER VACATING OCTOBER 9, 2019 HEARING ON MOTION TO MODIFY THE SCHEDULING ORDER |
| Defendant. | |
| | (ECF No. 22) |

## I.

## INTRODUCTION

Currently before the Court is Defendant the United States' motion to modify the scheduling order. (ECF No. 22.) Plaintiffs Patricia Jurado, Manuel Jurado, Jr., and Joel Jurado (the "Jurado Plaintiffs"), have given authorization to join in this motion. (ECF No. 22 at 2.)[1] Plaintiffs Maricela Laurino, Yvette Jurado, Vivian Jurado, and Irma Jurado (the "Laurino Plaintiffs"), oppose the motion. (ECF No. 25.) The Court, having reviewed the record, finds this matter suitable for decision without oral argument. See Local Rule 230(g). Accordingly, the previously scheduled hearing set for October 9, 2019 shall be vacated and the parties will not be

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

required to appear at that time. Having considered the moving papers, the declarations and exhibits attached thereto, as well as the Court's file, the Court issues the following order granting the motion to modify the scheduling order.

## II.

## BACKGROUND

This is a consolidated action where Plaintiffs are pursuing claims alleging the wrongful death of their father, Manuel Jurado, Sr. (the "Decedent"), who died after a motor vehicle accident involving a United States Postal Service vehicle. (Mem. Supp. Mot. Modify Sched. Order ("Mem.") 1, ECF No. 22-1; Laurino Pl's Opp'n Mot. Modify Sched. Order ("Opp'n") 1-2, ECF No. 25.) The Laurino Plaintiffs filed this action on May 9, 2018. (ECF No. 1.) The Jurado Plaintiffs filed case number 1:18-cv-00739-LJO-SAB, which was consolidated with this action on July 16, 2018. (ECF No. 10.) The Jurado Plaintiffs are the Decedent's children from his first marriage, while the Laurino Plaintiffs are the Decedent's children from his second marriage. (Mem. 1-2.)[2]

On September 27, 2018, the Court issued a scheduling order setting the discovery deadlines and a trial date of March 17, 2020. (ECF No. 15.) On April 19, 2019, pursuant to the request of Defendant, the Court modified the scheduling order extending the discovery deadlines by approximately ninety days, including a close of non-expert discovery on September 30, 2019, an October 18, 2019 deadline for designation of expert witnesses, and a trial date of June 16, 2020. (ECF No. 21.)

On August 5, 2019, Defendant served deposition notices for each of the Plaintiffs to occur in the week of August 27, 2019. (Mem. 2.) On August 8, 2019, counsel for the Laurino Plaintiffs informed Defendant that he was not available that week, and on August 9, 2019, Defendant offered to schedule the depositions the following week. (Id.) On August 15, 2019, counsel for the Jurado Plaintiffs indicated he was not available the week of September 3, 2019, and offered the week of September 16, 2019, to complete the depositions. (Id.) On August 16,

---

[2] In the filed opposition, the Laurino Plaintiffs state the Jurado Plaintiffs' action was "filed by adults *claiming* to be children from Mr. Jurado's first marriage." (Opp'n 2 (emphasis added).)

2019, Defendant's counsel informed Plaintiffs' counsel he was not available the week of September 16, and offered to take the depositions the week of September 23. (Id.) All parties confirmed availability and Defendant served amended deposition notices setting the depositions for September 23, 24, and 25, 2019. (Id.)

The depositions of the four Laurino Plaintiffs occurred on September 23 and 24, 2019, and the depositions of two of the Jurado Plaintiffs occurred on September 25, 2019. (Id.) During depositions, Defendant asked the Laurino Plaintiffs questions regarding two handwritten documents that the Laurino Plaintiffs had produced in discovery. (Id.) The two documents were produced on January 16, 2019, in response to Defendant's discovery demanding any writings purporting to be the Decedent's will. (Opp'n 3.) The first handwritten letter is dated July 25, 2015 (the "July 25 Letter"). (Mem. 2; Decl. Philip A. Scarborough ("Scarborough Decl.") ¶ 2, Ex. 1, ECF No. 22-2 at 3.) The second handwritten letter is dated May 21, 2016 (the "May 21 Letter"). (Mem. 2; Scarborough Decl. ¶ 3, Ex. 2, ECF No. 22-2 at 5.) The May 21 Letter was admitted to probate as the will of the Decedent in this action. (Mem. 2; Scarborough Decl. ¶ 4, Ex. 3, ECF No. 22-2 at 13.) Both the July 25 Letter and the May 21 Letter have a handwritten signature of "Manuel Jurado" at the end of each letter. (Mem. 2.) The May 21 Letter contains numerous statements portraying the Decedent's relationship with the Jurado Plaintiffs in a negative light, an issue that Defendant argues is directly relevant to the Jurado Plaintiffs' wrongful death claims in this action. (Mem. 2-3.)

During the September 2019 depositions, the Laurino Plaintiffs testified that the handwriting and the signature on the May 21 Letter belonged to the Decedent in this action. (Mem. 3.) However, two Jurado Plaintiffs testified the handwriting and signature on the May 21 Letter did not belong to their father. (Mem. 3.) Defendant states that prior to the depositions, there was no indication that the parties would have a dispute about the identity of the person who wrote the two letters, and therefore the deposition testimony has created an unanticipated dispute that requires further discovery. (Mem. 3.)

A probate proceeding bearing case number 18CEPR00397 has been ongoing in the Fresno County Superior Court during this action. (Opp'n 3.) Documents from the state probate

proceeding, which the Laurino Plaintiffs request this Court to take judicial notice of, show that on July 18, 2018, the state court found that Manuel Jurado died testate and his will dated May 21, 2016, was admitted to probate by minute order. (Opp'n 3; Scarborough Decl. ¶ 4, Ex. 3, ECF No. 22-2 at 14-15.) The Laurino Plaintiffs emphasize that the will referenced in the state court document is the May 21 Letter. (Opp'n 3.) The Laurino Plaintiffs also emphasize that the docket in the state court probate proceeding reflects that the Jurado Plaintiffs are taking steps to challenge the will, however, the Jurado Plaintiffs did not file anything to challenge the will within the time allowed (120 days), but claim in the probate court that they were deceived by the attorney representing the estate, as set forth in a pleading filed January 14, 2019. (Opp'n 3; Decl. Stuart R. Chandler ("Chandler Decl."), Ex. A, ECF No. 25-1 at 3.) The state court trial on this issue is currently set for November 19, 2019. (Id.)

On September 26, 2019, Defendant contacted counsel for both groups of Plaintiffs and informed them that in light of the deposition testimony, Defendant required additional discovery focused on identifying additional samples of the Decedent's handwriting and signatures, production and inspection of the original copies of the May 21 Letter and the July 25 Letter, interrogatories related to those issues, and follow-up discovery as necessary. (Mem. 3.) On that same day, Defendant also proposed that the parties stipulate to extend fact discovery by three months and adjust other deadlines accordingly. (Mem. 3.) Counsel for the Jurado Plaintiffs responded by email on September 26, 2019, indicating an agreement to the requested scheduling modification. (Mem. 3.) During an in-person meeting on September 27, 2019, counsel for the Laurino Plaintiffs indicated that he opposed the requested modification. (Id.)

On September 26, 2019, Defendant served document requests and interrogatories pertaining to these issues on all Plaintiffs, and on September 27, 2019, the Jurado Plaintiffs also served document requests pertaining to this issue on the Laurino Plaintiffs. (Id.)

On September 27, 2019, Defendant filed the current motion to modify the scheduling order currently before the Court, as well as an application to hear the motion on shortened time. (ECF Nos. 22, 23.) On September 30, 2019, the Court granted Defendant's application to shorten time, set the motion to modify the scheduling order for hearing on October 9, 2019,

4

ordered that any opposition to the motion shall be filed on or before October 2, 2019, and ordered that any reply to the opposition be filed on or before October 4, 2019. (ECF No. 24.) On October 2, 2019, the Laurino Plaintiffs filed an opposition to the motion to modify the scheduling order. (ECF No. 25.) On October 4, 2019, Defendant filed a reply in support of the motion to modify the scheduling order. (ECF No. 26.) On October 4, 2019, the Jurado Plaintiffs also filed a reply in support of the motion to modify. (ECF No. 27.)

## III.

## LEGAL STANDARD

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The "good cause" standard "primarily considers the diligence of the party seeking the amendment," and the Court "may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (internal citation and quotations omitted). The prejudice to parties opposing modification of the scheduling order, if any, may be grounds for denying the motion, but the focus is on the moving party's reason for seeking the modification. Id. If the party seeking to amend the scheduling order fails to show due diligence, the inquiry should end, and the court should not grant the motion to modify. Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (citing Mammoth Recreations, 975 F.2d at 609). "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." United States ex rel. Terry v. Wasatch Advantage Grp., LLC, 327 F.R.D. 395, 404 (E.D. Cal. 2018) (internal quotation marks and citation omitted) (alteration in original).

///

# IV.

# DISCUSSION

## A. Defendant's Arguments in Favor of Modifying the Scheduling Order

Defendant argues good cause exists to modify the scheduling for the following reasons: (1) the dispute concerning the authenticity of the signatures on the letters in question could not have been reasonably anticipated prior to the Laurino Plaintiffs' depositions as it was not until the conflicting deposition testimony was given that the dispute became apparent; (2) Defendant originally sought to take the depositions sufficiently in advance of the close of discovery to permit follow-up discovery if necessary, and the depositions were scheduled near the end of the discovery period to accommodate the schedule of Plaintiffs' counsel; (3) the dispute concerning the letters requires additional discovery that would not normally be required in a case of this nature, as for example, there would be no need to obtain additional handwriting samples or obtain an expert report analyzing the documents; (4) after the dispute became apparent, Defendant and the Jurado Plaintiffs promptly served relevant discovery and the requested extension is not being sought for the purpose of delay; and (5) the dispute concerning the letters goes to crucial aspects of the claim at issue and fairness of this litigation as if the letters are accurate representations of the Decedent's state of mind near the time of death, it may affect the value of the Jurado Plaintiffs' claims, and on the other hand, if the Jurado Plaintiffs are correct that the handwriting is not the Decedent's, it raises the question of whether the Laurino Plaintiffs committed perjury in an attempt to bolster their claims against Defendant, which may warrant terminating sanctions. (Mot. 4.)

Defendant requests the following modifications to the scheduling order's discovery deadlines and trial date:

- Non-Expert Discovery Deadline: From September 30, 2019, to December 31, 2019;
- Expert Disclosure Deadline: from October 18, 2019, to January 17, 2020;
- Supplemental Expert Disclosure Deadline: from November 22, 2019, to February 21, 2020;
- Expert Discovery Deadline: from January 31, 2020, to April 30, 2020;

6

1  • Dispositive Motion Filing Deadline: from February 28, 2020, to May 29, 2020;

2  • Pre-trial Conference: From April 29, 2020, to July 29, 2020, at 8:15 a.m. in Courtroom 4 before United States District Judge Lawrence J. O'Neill;

4  • Trial: From June 16, 2020, to September 15, 2020, at 8:30 a.m. in Courtroom 4 before United States District Judge Lawrence J. O'Neill.

(Proposed Order, ECF No. 22-3.)

### B. Opposing Plaintiffs' Arguments Against Modifying the Scheduling Order

The Laurino Plaintiffs (or "Opposing Plaintiffs"), state they "do not substantially disagree with the facts of the case leading to the claimed need for additional discovery by the United States," but contend the state probate matter is controlling on the issue. (Opp'n 4.) The Opposing Plaintiffs argue that they have testified in deposition that the May 21 Letter appears to have been written and signed by the Decedent, and that as a matter of law, it has been accepted by state court as the Decedent's will. (Opp'n 4.) The Opposing Plaintiffs principal argument in opposing the modification is that the documents are inadmissible hearsay and thus to delay trail of this action to allow discovery into something that is ultimately inadmissible would result in a delay of justice. (Opp'n 5-6.) In this regard, the Opposing Plaintiffs first argue that to allow a statement in trial of a person who is not in court, the statement must be one of an opposing party and the Decedent is not an opposing party under Federal Rule of Evidence 801(d)(2)(A), Ervine v. Desert View Reg'l Med. Ctr. Holdings LLC, No. 2:10-CV-1494 JCM GWF, 2011 WL 6139532 (D. Nev. Dec. 8, 2011). (Opp'n 5.) Second the Opposing Plaintiffs argue that any residual common law hearsay exception under Rule 807 would not apply.[3] Finally, the Opposing

---

[3] Under Federal Rule of Evidence 807, in addition to providing notice, a statement must be: (1) trustworthy; (2) material; (3) more probative than other available evidence; and (4) must fulfill the interests of justice, In re Cornfield, 365 F. Supp. 2d 271, 278 (E.D.N.Y. 2004). (Opp'n 6.) Under this standard, the Opposing Plaintiffs state they do not intend to introduce into evidence either of the letters in this action nor intend to present any of their contents, but were only produced in response to the Defendant's discovery requests. (Opp'n 6.) Second, the Opposing Plaintiffs state that given the Jurado Plaintiffs' position that the exhibits are not in the Decedent's handwriting, the statement from the Decedent is of questioned trustworthiness. (Opp'n 6.) Third, the Opposing Plaintiffs argue what the Decedent thought of the Jurado Plaintiffs, if and when he drafted the letters, is irrelevant to this action, as "[w]e do not know his mood or sobriety when he purportedly wrote the exhibits, [and] [t]he best evidence of the quality of the relationship between the Jurado Plaintiffs and the decedent is their testimony, pictures, birthday cards and the like – not the purported set of exhibit letters." (Opp'n 6.) Further, under the notice provision of Rule 807(b), the "statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address,

1 Plaintiffs argue that judicial notice would not make the letter admissible. (Opp'n 7.)[4]

2  As more directly relevant to the legal standards applicable to granting a motion to modify a scheduling order, the Opposing Plaintiffs argue the motion is untimely as Defendant has had the subject letters since they were produced in January of 2019, and thus Defendant knew in January that the Opposing Plaintiffs claimed the subject documents were the Decedent's will, and the line of questioning at depositions conducted nine months after the documents were produced could have been addressed earlier but was only investigated a week prior to the close of discovery. (Opp'n 8.) Further, Opposing Plaintiffs argue that: (1) Defendant's counsel's declaration lacks specificity of how this dispute was in fact unanticipated, as the dispute has been ongoing in state court; (2) while Defendant states the purpose of modification is to seek additional writing samples for an expert to review, Defendant does not specify or provide an expert declaration that any expert actually needs additional writing samples so such need is conjecture, and the writings already available may be sufficient for expert analysis; (3) the Jurado Plaintiffs have joined in the Defendant's motion and they have without question known about this dispute as in January of 2019 they declared in the probate court that the subject documents were not written by the Decedent (Chandler Decl., Ex. A), and the Jurado Plaintiffs should not be given an opportunity to conduct delayed discovery. (Opp'n 8.)

 Finally, Opposing Plaintiffs allege that "[i]n reality . . . what seems to be happening" is the Jurado Plaintiffs are attempting to use this Court's discovery process as a mechanism to conduct discovery to help them in the state court action. (Opp'n 9.) Opposing Plaintiffs suggest

---

so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b). The Opposing Plaintiffs argue that because the declarant is deceased, there is no way to give such notice so the other party has a fair opportunity to meet it.

[4] Regarding their judicial notice argument, the Opposing Plaintiffs state that during an informal discussion with Defendant concerning these issues, Defendant has asserted that at least as to the May 21 Letter, Rule 201 concerning judicial notice applies. (Opp'n 7.) Opposing Plaintiffs disagree as it "requires the state court matter be an adjudicated fact only," however, in the state probate action, the May 21 Letter has been accepted as the will and entered into probate. (Id.) To the extent judicial notice could be taken of May 21 Letter, it would be the adjudicated fact that the probate court, in an adversarial proceeding, found the May 21 Letter to be the valid and accepted will, and to the extent judicial notice applies, it would establish that the will is valid. (Opp'n 7.) Opposing Plaintiffs also argue: (1) that this Court lacks the jurisdictional right to hear a will contest or challenge the will's validity, as any attack upon the May 21 Letter by Defendant would be; (2) there is no federal question that the Court could use to assert jurisdiction over the probate action, and this action does not involve diversity citizenship; and (3) to attempt to overturn the findings of the state probate court that the will is valid would violate California Probate Code Section 8007(a). (Opp'n 7.)

that to the extent the Court may be inclined to modify the scheduling order, it should do so only for the Defendant United States, as the Jurado Plaintiffs are not entitled to any modification, and also suggest that to the extent the Court is inclined to consider the import of the actions of the state probate court, perhaps the Court should wait to address this discovery issue until after the November 19, 2019 trial scheduled in the state court proceeding. (Opp'n 9.)

### C. The Jurado Plaintiffs' Reply Briefing in Support of Modification

On October 4, 2019, the Jurado Plaintiffs submitted a reply memorandum in support of the motion to modify the scheduling order. (Jurado Pl.'s Reply Mem. Support Mot. Modify Sched. Order ("Jurado Reply"), ECF No. 27.) The Jurado Plaintiffs' principal argument in favor of modifying the scheduling order is that further discovery is necessary to investigate possible perjury on the part of the Laurino Plaintiffs, stating the "[u]ndersigned counsel understands the gravity of this allegation and does not make it lightly [and] [i]t is the very gravity of this situation that supports modifying the scheduling order." (Jurado Reply 2.) In this regard, the Jurado Plaintiffs emphasize that Plaintiff Yvette Monique Jurado testified that she personally witnessed the Decedent write the May 21 Letter, that the Decedent instructed her to retrieve it following the Decedent's death, and she did locate the letter following the passing. (Id.; Dep. Yvette Monique Jurado ("YMJ Dep.") 57:7-16, 61:3-22, 62:4-63:24, Ex. A, Decl. Denis Delja ("Delja Decl.), ECF No. 27-1 at 3.)

In briefing, the Jurado Plaintiffs argue that, "even to an untrained eye," the Decedent clearly did not write the May 21 Letter, and proffer a birthday card attached as an exhibit to the deposition of Plaintiff Yvette Monique Jurado, which Yvette Monique Jurado identified as containing the Decedent's handwritten note. (Jurado Reply 2-3; YMJ Dep. 73:23-75:19.) The Jurado Plaintiffs outline various excerpts of handwriting from the documents to demonstrate alleged inconsistencies in the writing. (Jurado Reply 3-4.) The Jurado Plaintiffs also highlight that Plaintiff Yvette Monique Jurado signed medical consent forms as a witness to her father's signature, and argue this supports the inference that she knowingly gave false testimony concerning the signature on the May 21 Letter. (Jurado Reply 4.) The Jurado Plaintiffs have retained a forensic document examiner to analyze the May 21 Letter, and attach a declaration

from the expert explaining that a thorough analysis would involve: (1) examination of the original May 21 Letter; (2) examination of the original signatures and writings of the Decedent; and (3) an examination of the original signatures and writings of other individuals who might have authored and signed the May 21 Letter. (Jurado Reply 4; Decl. James Tarver ("Tarver Decl.") ¶¶ 10-12, ECF No. 27-2.)

As for the Opposing Plaintiffs' position regarding admissibility of the letters, the Jurado Plaintiffs contend that potential evidence may discovered that the Laurino Plaintiffs were untruthful about the May 21 Letter, such evidence is probative and admissible on the issue of bias, and evidence of the authorship of the letter would be extrinsic evidence to impeach the testimony of the Laurino Plaintiffs. (Jurado Reply 5.) In this regard, the Jurado Plaintiffs concede that extrinsic evidence is not admissible to prove the Laurino Plaintiffs' character for truthfulness, Fed. R. Evid. 608(b). (Jurado Reply 5.) Rather, the Jurado Plaintiffs argue they would not be introducing evidence of the letter's authorship to show a propensity to lie in general, but rather would be introducing evidence to show bias and self-interest of the Laurino Plaintiffs that is motivating them to be untruthful in this particular case. (Jurado Reply 5-6.) The Jurado Plaintiffs argue this would be relevant to countering testimony from the Laurino Plaintiffs which disparaged the relationship the Decedent had with the Jurado Plaintiffs. (Jurado Reply 6.) The Jurado Plaintiffs argue this is significant because the Laurino Plaintiffs are in a sense competing with the Jurado Plaintiffs over a single damages award, and disparaging the relationship with the Jurado Plaintiffs would allow for a larger share of the damages award. (Id.)

Finally, as for the Opposing Plaintiffs argument that the motion to modify is untimely, the Jurado Plaintiffs emphasize the Laurino Plaintiffs did not identify either letter in their Rule 26 disclosures, and while the Laurino Plaintiffs produced the letters to the Defendant, they never served copies of that discovery on the Jurado Plaintiffs. (Jurado Reply 7.) The Jurado Plaintiffs state it was not until the depositions in September that they became aware that the Laurino Plaintiffs "intended to falsely disparage the Jurado Action Plaintiffs' relationship with their father in these wrongful death cases . . . [and] [t]he Jurado Action Plaintiffs acted promptly, and retained a handwriting expert on September 24, 2019, and hand-served discovery on the Laurino

1 Action Plaintiffs on September 27, 2019." (Id.; Delja Decl. ¶¶ 5-6.)

### D. The Court Finds Good Cause to Modify the Scheduling Order

While the Opposing Plaintiffs raise potentially relevant questions concerning the ultimate admissibility of certain documents as evidence in this matter, the Court agrees with Defendant that the Opposing Plaintiffs' focus on the issue of admissibility at this stage is premature and not pointedly relevant to the question of whether the scheduling order should be modified to allow for further discovery into various issues related to the letters in question.

The Federal Rules define the scope of permissible discovery broadly. Rule 26 explicitly provides that the "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The scope of discovery is further defined to allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id. As explained below, the discovery sought is relevant and proportional to the needs of the case, and Defendant has shown diligence and good cause to modify the scheduling order to allow for such discovery.

The Court agrees with Defendant that "[t]here is no reasonable argument that the discovery sought is not relevant to the United States' defenses in this case." (Def.'s Reply Mem. Support Mot. Modify Sched. Order ("Def. Reply") 3, ECF No. 26.) Based on the conflicting deposition testimony concerning the provenance of the letters, the Court finds that further discovery directed at the question of who wrote the July 25 Letter and the May 21 Letter is highly relevant to the Defendant's ability to defend in this action, particularly as to amount of damages. The May 21 Letter contains statements that present the Decedent's relationship with the Jurado Plaintiffs in a negative light. The content of the letters, as well as the dispute over whether the Decedent wrote the letters, are relevant for various reasons. First, if the Laurino Plaintiffs' testimony that the letter was written by the Decedent is accurate, the sentiments

contained in the letter directly relate to the Jurado Plaintiffs' claims and the amount of damages they would be entitled to recover in this wrongful death action. Second, given the Jurado Plaintiffs' testimony that the letters were not the Decedent's handwriting, if the letters were in fact written by the Decedent, such fact is relevant to impeach the Jurado Plaintiffs testimony that the Decedent did not write the letters. Third, if the Jurado Plaintiffs are correct that the handwriting does not belong to the Decedent, it is relevant to impeaching the Laurino Plaintiffs regarding the authenticity of the letters, and perhaps, may raise the possibility that the Laurino Plaintiffs committed perjury. Based on the foregoing reasons concerning the relevancy of the letters and discovery pertaining to such, the Opposing Plaintiffs' argument that "[w]hat the Decedent though about any of the Jurado Plaintiffs, if and when he drafted [the letters], is simply irrelevant to this federal action," (Opp'n 6), is without merit.

The Court agrees with Defendant that the factors under Rule 26 weigh in favor of allowing further discovery for the following reasons: (1) the requested discovery primarily relates to handwriting and signature samples of the Decedent, inspection of the original versions of the July 25 Letter and the May 21 Letter, and interrogatories related to the circumstances of the letters' discovery, which the Court finds to be relevant and proportional to the needs of the case; (2) the burden of responding to the discovery is not great, and only Plaintiffs are able to provide such discovery; (3) the discovery is necessary to resolve an important issue in the case, particularly given the allegations of perjury and the implications of such on the case as a whole; and (4) the benefit of the discovery outweighs the inconvenience and expense of responding to it given that Plaintiffs are seeking to recover millions of dollars, and again, because of the implications of possible perjury. (Def. Reply 3.)

Defendant has demonstrated diligence in pursuing discovery and depositions, as well as in attempting to obtain a stipulation to modify the scheduling order and filing the current motion at the earliest available time, which although close to the discovery cut-off deadline, was filed in advance of the close of discovery which occurred on September 30, 2019. (Mot. 2-4.) Here, the Court finds that based on the record before it, the dispute concerning the authenticity of the signatures on the letters in question could not have been reasonably anticipated by Defendant

prior to the Laurino Plaintiffs' depositions. (Def. Reply 5-6.) Further, while the Jurado Plaintiffs were certainly aware of the ongoing state court probate proceedings, the Court accepts the Jurado Plaintiffs' statement that the Laurino Plaintiffs did not identify either letter in their Rule 26 disclosures, that the Laurino Plaintiffs never served copies of that discovery on the Jurado Plaintiffs, and that it was not until the depositions in September that they became aware that the Laurino Plaintiffs "intended to falsely disparage the Jurado Action Plaintiffs' relationship with their father in these wrongful death cases." (Jurado Reply 7; Delja Decl. ¶¶ 5-6.)

Additionally, the Court finds the Defendant was diligent in seeking to take the depositions sufficiently in advance of the close of discovery to permit follow-up discovery if necessary.[5] Further, Defendant and the Jurado Plaintiffs have acted promptly by serving the additional discovery, by the Jurado Plaintiffs retaining a handwriting expert, and by Defendant immediately seeking a stipulated modification of the scheduling order and promptly filing a motion to do so when the Laurino Plaintiffs declined to join the stipulation. See Mammoth Recreations, 975 F.2d at 609; (Mot. 3-4; Jurado Reply 7; Delja Decl. ¶¶ 5-6.) These facts do not indicate the parties are taking any actions that would result in undue delay to the resolution of this case. While the Opposing Plaintiffs state delay of trial in this action to allow discovery into something ultimately inadmissible would result in a delay of justice (Opp'n 5-6), the Opposing Plaintiffs otherwise do not argue or demonstrate that they would be prejudiced by a three-month extension of the discovery deadlines and trial date in this action. The Court finds the burden of such delay does not begin to outweigh the importance of the discovery sought in relation to the overall context of the case, and does not find the Opposing Plaintiffs would be unfairly prejudiced by such delay. See Mammoth Recreations, 975 F.2d at 609.

Further, while the Court declines to make any definitive ruling or speculate on the question of admissibility of evidence at trial, the Court agrees with Defendant and the Jurado Plaintiffs that the letters or other evidence related to this issue may be admissible, as they may

---

[5] The Court notes that while Defendant argues the "depositions were scheduled near the end of the discovery period to accommodate the schedule of plaintiffs' counsel," the depositions were delayed one week due to Defendant's unavailability the week of September 3. (Mot. 2, 4.)

13

form the basis for the impeachment of witnesses, or could be admitted for reasons unrelated to the truth of the matters asserted within them. (Def. Reply 2.) Additionally, as to the Opposing Plaintiffs' argument that the May 21 Letter cannot be admitted through judicial notice (Opp'n 7), again, admissibility is not the overriding inquiry before the Court in adjudicating the motion to modify the scheduling order.

As to the Opposing Plaintiffs' argument that this Court cannot adjudicate the validity of a probate matter (Opp'n 7), the Court agrees with Defendant that this is not the purpose of the discovery sought by Defendant, but instead, Defendant is seeking to determine whether the documents produced by the Laurino Plaintiffs are reliable evidence of the relationship the Decedent had with the various Plaintiffs in this action. Whether such determination would create a preclusive effect on an issue pending in the probate court in a matter involving some, but not all of the parties in this action is not before the Court, and the Court agrees with Defendant that it would not be proper to preclude the Defendant, which is not a party in the probate action, from fully litigating the issues in this action simply because they may relate to matters in a different proceeding between the Plaintiffs. (Def. Reply 4.) Further, as for the Opposing Plaintiffs' suggestion that a judgment entered by the probate court would be preclusive as to the Defendant with respect to the validity of the will (Opp'n 8), the Court agrees with Defendant that the issue in the probate court is whether the will is invalid, the Defendant is not a party to that action, and the issue in this action is the nature of the relationship between the Plaintiffs and the Decedent and whether the Plaintiffs in this action have been truthful about the handwriting and signatures in the letters. (Def. Reply 4.)

In conclusion, the Defendant, along with three of the seven Plaintiffs in this action who have given authorization to join Defendant in this motion, have proffered legitimate reasons for the requested modification of the scheduling order as outlined in the previous section. (Mot. 4; Scarborough Decl. ¶¶ 2-5.) Defendant has demonstrated diligence in pursuing discovery and depositions, as well as in attempting to obtain a stipulation to modify the scheduling order and filing the current motion at the earliest available time, which although close to the discovery cut-off deadline, was filed in advance of the close of discovery which occurred on September 30,

2019. (Mot. 2-4.) Based on these facts, the Court finds Defendant and the Jurado Plaintiffs have demonstrated diligence and sufficient good cause to modify the scheduling order. See Mammoth Recreations, 975 F.2d at 609.

**V.**

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that the motion to modify the scheduling order (ECF No. 22) is GRANTED, the hearing scheduled for October 9, 2019 is VACATED, and the September 27, 2018 scheduling order (ECF No. 15), as modified April 19, 2019 (ECF No. 21), is further modified as follows:

1. Non-Expert Discovery Deadline: December 31, 2019;
2. Expert Disclosure Deadline: January 17, 2020;
3. Supplemental Expert Disclosure Deadline: February 21, 2020;
4. Expert Discovery Deadline: April 30, 2020;
5. Dispositive Motion Filing Deadline: May 29, 2020;
6. Pre-trial Conference: August 12, 2020, at 8:15 a.m. in Courtroom 4 before United States District Judge Lawrence J. O'Neill;
7. Trial: September 29, 2020, at 8:30 a.m. in Courtroom 4 before United States District Judge Lawrence J. O'Neill;[6] and
8. All other dates and aspects of the September 27, 2018 scheduling order, as previously modified, shall remain in effect.

IT IS SO ORDERED.

Dated: **October 8, 2019**

UNITED STATES MAGISTRATE JUDGE

---

[6] The pre-trial conference date and trial date requested by Defendant were unavailable.

15