1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

| | |
|---|---|
| MARICELA LAURINO, et al., | Case No. 1:18-cv-00636-LJO-SAB |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES |
| v. | |
| UNITED STATES, | (ECF Nos. 29, 30) |
| Defendant. | |

9
10
11
12
13
14

## I.

## INTRODUCTION

15
16

Currently before the Court is the United States' ("Defendant") motion to compel responses to interrogatories and requests for production filed on November 6, 2019. (ECF No. 29.)[1] The Court found the motion suitable for decision without oral argument and the hearing on the motion has been vacated. Having considered the joint statement regarding the discovery dispute, the exhibits attached thereto, as well as the Court's file, the Court issues the following order granting the motion to compel discovery responses.

17
18
19
20
21
22

## II.

## BACKGROUND

23
24

This is a consolidated action in which Plaintiffs are pursuing claims alleging the wrongful death of their father, Manuel Jurado, Sr. (the "Decedent"), who died after a motor vehicle accident involving a United States Postal Service vehicle. (J.S. at 1-2.) Plaintiffs Maricela

25
26
27
28

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

Laurino,[2] Yvette Jurado, Vivian Jurado, and Irma Jurado (the "Laurino Plaintiffs") filed the above entitled action on May 9, 2018. (J.S. at 2; ECF Nos. 1, 2.) Plaintiffs Patricia Jurado, Manuel Jurado, Jr., and Joel Jurado (the "Jurado Plaintiffs") filed case number 1:18-cv-00739-LJO-SAB, which was consolidated with this action on July 16, 2018. (J.S. at 2; ECF No. 10.) The Jurado Plaintiffs are the Decedent's children from his first marriage, while the Laurino Plaintiffs are the Decedent's children from his second marriage. (J.S. at 2.)

During depositions of the Laurino Plaintiffs, a question arose as to the identity of the individual who wrote and signed two handwritten documents: a letter dated July 25, 2015 (the "July 25 Letter") and a letter dated May 21, 2016 (the "May 21 Letter"). (Id.) Following the depositions, on September 27, 2019, Defendant filed a motion to modify the scheduling order to permit additional discovery on the issue pertaining to the author of these documents. (ECF No. 22.) On October 8, 2019, the Court granted the motion to modify the scheduling order. (ECF No. 28.) As discussed in the Court's order, the two documents were produced on January 16, 2019, in response to Defendant's discovery demanding any writings purporting to be the Decedent's will. (Id. at 3.) The May 21 Letter was admitted to probate as the will of the Decedent. (Id.) Both the July 25 Letter and the May 21 Letter have a handwritten signature of "Manuel Jurado" at the end of each letter. (Id.) The May 21 Letter contains numerous statements portraying the Decedent's relationship with the Jurado Plaintiffs in a negative light. (Id.) During the September 2019 depositions, the Laurino Plaintiffs testified that the handwriting and the signature on the May 21 Letter belonged to the Decedent in this action. (Id.) However, two Jurado Plaintiffs testified the handwriting and signature on the May 21 Letter did not belong to their father. (Id.)

As to the current discovery dispute, on September 26, 2019, Defendant served two identical interrogatories on each of the Laurino Plaintiffs which sought information concerning the July 25 Letter and the May 21 Letter. (J.S. at 2.) While Defendant originally moved to compel further responses to these interrogatories (ECF No. 29), the Laurino Plaintiffs have

[2] While the docket and complaint identify this plaintiff as "Maricela Laurino," as noted in the Joint Statement, other documents filed identify her as "Marisela Laurino." (J.S. 2.)

invoked their Fifth Amendment privilege against self-incrimination with respect to these two interrogatories, and Defendant now states that it is not moving to compel further responses to these interrogatories at this time and is withdrawing the motion to compel such responses to these interrogatories without prejudice.  (J.S. at 2.)

On September 26, 2019, Defendant also served eight requests for production ("RFP") on the Laurino Plaintiffs.  (Id.; Ex. 1, ECF No. 30-1 at 2-5.)  These RFP requested inspection of the July 25 Letter and the May 21 Letter and any notebooks that had previously contained the letters, production of documents containing or reflecting the handwriting and signature of the Decedent, production of the Decedent's bank and financial records, and the original and any copies of any current or previous will of the Decedent.  (Id.)

On October 17, 2019, Defendant served an additional eleven RFP on the Laurino Plaintiffs.  (J.S. at 2; Ex. 2, ECF No. 30-2 at 2-5.)  These requests sought handwriting and signature samples from each of the Laurino Plaintiffs, production of any documents produced to or inspected by any other party in this litigation or the related state probate litigation, and documents produced by any other party in the state probate litigation.  (J.S. at 2-3.)

The Laurino Plaintiffs responded to each of these interrogatories and requests for production with various objections, including an assertion of their Fifth Amendment privilege against self-incrimination.  (Id.)  On November 13, 2019, counsel for Defendant and counsel for the Laurino Plaintiffs met and conferred via telephone to discuss the objections to the discovery requests, and the parties were unable to resolve the dispute and it is these requests for production of documents that are currently the subject of the dispute that is before the Court.  (J.S. at 3.)

### III.

### LEGAL STANDARD

#### A.    Motion to Compel Discovery

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information need not be admissible in evidence to be discoverable. Id. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Rule 34 of the Federal Rule of Civil Procedure provides that a party may serve upon any other party a request for production of any tangible thing within the party's possession, custody, and control that is within the scope of Rule 26. Fed. R. Civ. P. 34(a)(1)(B). The party receiving the request has thirty days in which to respond. Fed. R. Civ. P. 34(b)(2). A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34. Fed. R. Civ. P. 37(a)(3(B)(iv).

Motions to compel are governed by Federal Rule of Civil Procedure 37, which states, in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(1) *In General.*** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37. Rule 37 states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

If a motion to compel discovery is granted, Rule 37(a)(5)(A) requires a court to order the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). If the motion is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion,

1  including attorney's fees," however the court "must not order this payment if the motion was

2  substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P.

3  37(a)(5)(B). Where the motion is granted in part and denied in part, the court "may, after giving

4  an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P.

5  37(a)(5)(C).

6          **B.      Fifth Amendment Privilege Against Self-Incrimination**

7          The primary objections to the discovery involved in this dispute are grounded in the Fifth

8  Amendment privilege against self-incrimination. The Fifth Amendment provides that "[n]o

9  person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const.

10 amend. V. The privilege against self-incrimination "protects a person only against being

11 incriminated by his own compelled testimonial communications." Doe v. United States, 487

12 U.S. 201, 207 (1988) (quoting Fisher v. United States, 425 U.S. 391, 409 (1976)). "To qualify

13 for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and

14 compelled." Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty., 542 U.S. 177, 189

15 (2004). "The privilege afforded not only extends to answers that would in themselves support a

16 conviction under a federal criminal statute but likewise embraces those which would furnish a

17 link in the chain of evidence needed to prosecute the claimant for a federal crime." Hoffman v.

18 United States, 341 U.S. 479, 486 (1951). The privilege may be asserted in any proceeding,

19 whether civil, criminal, administrative, judicial, investigatory, or adjudicatory, in which the

20 witness believes the information could reasonably be used in a subsequent state or federal

21 criminal proceeding. United States v. Balsys, 524 U.S. 666, 672 (1998) (citing Kastigar v.

22 United States, 406 U.S. 441, 444–445 (1972)).

23         Of significance to the instant matter, the Supreme Court has expressly held and

24 reaffirmed that providing a handwriting sample is not a testimonial act protected under the Fifth

25 Amendment privilege. Gilbert v. California, 388 U.S. 263, 266-67 (1967); Fisher, 425 U.S. at

26 408; In re Grand Jury Proceedings, 40 F.3d 959, 962 (9th Cir. 1994) (recognizing that providing

27 a handwriting sample is not a testimonial act protected under the Fifth Amendment). Further, the

28 privilege only protects the contents of documents created by the privilege holder under some

method of compulsion, and not the content of documents voluntarily prepared. Where the preparation of the document "is voluntary, no compulsion is present," and a "subpoena that demands production of documents 'does not compel oral testimony; nor would it ordinarily compel the [responding party] to restate, repeat, or affirm the truth of the contents of the documents sought.' " Doe, 465 U.S. at 610 (quoting Fisher, 425 U.S. at 409; see also Fisher, 425 U.S. at 410 n.11 ("In the case of a documentary subpoena the only thing compelled is the act of producing the document and the compelled act is the same as the one performed when a chattel or document not authored by the producer is demanded."); Baltimore City Dep't of Soc. Servs. v. Bouknight, 493 U.S. 549, 554 (1990) ("When the government demands that an item be produced, the only thing compelled is the act of producing the [item].") (citations and quotations omitted) (alteration in original). Thus, documents sought that were not prepared by the witness claiming the privilege are generally not protected by the Fifth Amendment as they would not require compelled testimony, nor require affirmation of the truth of the contents:

> Therefore, the Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else.

Fisher, 425 U.S. at 409–10 (1976) (internal citations and footnotes omitted).

    1.    The Act of Production may be a Testimonial Act Subject to Privilege

"The Fifth Amendment's protection may nonetheless be implicated because the act of complying with the government's demand testifies to the existence, possession, or authenticity of the things produced . . . [b]ut a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." Baltimore City, 493 U.S. at 555 (citations omitted). Whether this act of complying with a demand for production implicates the Fifth Amendment because of the testimonial aspects of production is a fact-dependent inquiry, as recognized and discussed in Fisher:

The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both "testimonial" and "incriminating" for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof. In light of the records now before us, we are confident that however incriminating the contents of the accountant's workpapers might be, the act of producing them the only thing which the taxpayer is compelled to do would not itself involve testimonial self-incrimination.

It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment. The papers belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client. Surely the Government is in no way relying on the "truth-telling" of the taxpayer to prove the existence of or his access to the documents. The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers. Under these circumstances by enforcement of the summons "no constitutional rights are touched. The question is not of testimony but of surrender."

When an accused is required to submit a handwriting exemplar he admits his ability to write and impliedly asserts that the exemplar is his writing. But in common experience, the first would be a near truism and the latter self-evident. In any event, although the exemplar may be incriminating to the accused and although he is compelled to furnish it, his Fifth Amendment privilege is not violated because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege. This Court has also time and again allowed subpoenas against the custodian of corporate documents or those belonging to other collective entities such as unions and partnerships and those of bankrupt businesses over claims that the documents will incriminate the custodian despite the fact that producing the documents tacitly admits their existence and their location in the hands of their possessor. The existence and possession or control of the subpoenaed documents being no more in issue here than in the above cases, the summons is equally enforceable.

Moreover, assuming that these aspects of producing the accountant's papers have some minimal testimonial significance, surely it is not illegal to seek accounting help in connection with one's tax returns or for the accountant to prepare workpapers and deliver them to the taxpayer. At this juncture, we are quite unprepared to hold that either the fact of existence of the papers or of their possession by the taxpayer poses any realistic threat of incrimination to the taxpayer.

As for the possibility that responding to the subpoena would authenticate the workpapers, production would express nothing more than the tax payer's belief that the papers are those described in the subpoena. The taxpayer would be no more competent to authenticate the accountant's workpapers or reports by producing them than he would be to authenticate them if testifying orally. The taxpayer did not prepare the papers and could not vouch for their accuracy. The

documents would not be admissible in evidence against the taxpayer without authenticating testimony. Without more, responding to the subpoena in the circumstances before us would not appear to represent a substantial threat of self-incrimination . . . Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his "private papers,". We do hold that compliance with a summons directing the taxpayer to produce the accountant's documents involved in these cases would involve no incriminating testimony within the protection of the Fifth Amendment.

Fisher, 425 U.S. at 410–14 (internal citations and footnotes omitted).

As discussed in Fisher, when the "existence and location" of the documents is a "foregone conclusion," and the responding party "adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers," there will be no Fifth Amendment protection as "[t]he question is not of testimony but of surrender." Id. at 411 (citation omitted). The existence and location may be considered a foregone conclusion where the requesting party can establish with "reasonable particularity" that the documents exist and the responding party possesses them, however "actual knowledge of the existence and location of each and every responsive document" is not required. In re Grand Jury Subpoena, Dated Apr. 18, 2003, 383 F.3d 905, 910 (9th Cir. 2004).

Further, "it is the government's knowledge of the existence and possession of the actual documents, not the information contained therein, that is central to the foregone conclusion inquiry." Id. Generalized knowledge, such as assumptions that a particular employee will have documents because of the position within the company will not typically satisfy the standard. Id. at 911 ("The argument that a salesman such as Doe will always possess business records describing or memorializing meetings or prices does not establish the reasonably particular knowledge required."). Additionally, broadly worded subpoenas may "exceed[] the government's knowledge about the actual documents" and must be drafted more "narrowly to identify the documents that it could establish with reasonable particularity." Id.; see also United States v. Hubbell, 530 U.S. 27, 34-38, (2000) ("It is apparent from the text of the subpoena itself that the prosecutor needed respondent's assistance both to identify potential sources of information and to produce those sources."). The Supreme Court's discussion in Hubbell provides a useful discussion of these issues:

More relevant to this case is the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not "compelled" within the meaning of the privilege.  Our decision in <u>Fisher v. United States</u>, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), dealt with summonses issued by the Internal Revenue Service (IRS) seeking working papers used in the preparation of tax returns.  Because the papers had been voluntarily prepared prior to the issuance of the summonses, they could not be "said to contain compelled testimonial evidence, either of the taxpayers or of anyone else."  Accordingly, the taxpayer could not "avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else."  It is clear, therefore, that respondent Hubbell could not avoid compliance with the subpoena served on him merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself.

On the other hand, we have also made it clear that the act of producing documents in response to a subpoena may have a compelled testimonial aspect.  We have held that "the act of production" itself may implicitly communicate "statements of fact."  By "producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic."  Moreover, as was true in this case, when the custodian of documents responds to a subpoena, he may be compelled to take the witness stand and answer questions designed to determine whether he has produced everything demanded by the subpoena.  The answers to those questions, as well as the act of production itself, may certainly communicate information about the existence, custody, and authenticity of the documents.  Whether the constitutional privilege protects the answers to such questions, or protects the act of production itself, is a question that is distinct from the question whether the unprotected contents of the documents themselves are incriminating.

<u>Hubbell</u>, 530 U.S. at 34-38 (internal citations and footnotes omitted).  The Court found there to be compelled testimony inherent in the production of the documents, as "[i]t [was] apparent from the text of the subpoena itself that the prosecutor needed respondent's assistance both to identify potential sources of information and to produce those sources," and "[g]iven the breadth of the description of the 11 categories of documents called for by the subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions."  <u>Id.</u> at 41.  The Court noted that "[t]he assembly of literally hundreds of pages of material in response to a request for 'any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or

provided to' an individual or members of his family during a 3-year period . . . [was] the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition." Id. at 41-42. The Court stated that compliance with the subpoena required the party to make "extensive use of 'the contents of his own mind' in identifying the hundreds of documents responsive to the requests in the subpoena." Id. at 43. "The assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox." Id. (citing Doe, 487 U.S. at 210 n.9). The Court held that "[i]n sum, we have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence," and "[t]hat constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources." Hubbell, 530 U.S. at 43. Because the production of the documents had a testimonial aspect, the defendant could not be compelled to produce them without being granted immunity. Id.

Finally, while the act of production may implicitly authenticate the documents in question, such authentication is a foregone conclusion if the government can independently authenticate the documents. In re Grand Jury, 383 F.3d at 912 ("The authenticity prong of the foregone conclusion doctrine requires the government to establish that it can independently verify that the compelled documents " 'are in fact what they purport to be.' ") (quoting United States v. Stone, 976 F.2d 909, 911 (4th Cir.1992)). "Independent verification not only requires the government to show that the documents sought to be compelled would be admissible independent of the witness' production of them, but also inquires into whether the government is compelling the witness to use his discretion in selecting and assembling the responsive documents, and thereby tacitly providing identifying information that is necessary to the government's authentication of the subpoenaed documents." In re Grand Jury, 383 F.3d at 912. The documents can be authenticated in various manners, including comparing to other documents, or relying on a handwriting analysis, but the act of production itself cannot be the necessary mechanism to provide authentication. Id. ("Although the government could probably

authenticate the writing on Doe's handwritten documents through handwriting analysis, it made little effort to demonstrate how anyone beside Doe could sift through his handwritten notes, personal appointment books, and diaries to produce what Doe's attorney estimates may be 4,500 documents related to the production or sale of DRAM. Such a response by Doe would provide the government with the identifying information that it would need to authenticate these documents."). In <u>In re Grand Jury</u>, the broad subpoena and types of documents sought, including "many documents that Doe created himself . . . required him to discriminate among the many documents he might possess, requiring him specifically to identify and produce to the grand jury those that related to the production or sale of DRAM." <u>Id.</u> Thus, the government "failed to demonstrate that it [could] authenticate the documents so broadly described in the subpoena without the identifying information that Doe would provide by using his knowledge and judgment to sift through, select, assemble, and produce the documents." <u>Id.</u> at 913.

## IV.

## DISCUSSION

Defendant requests the Court issue an order compelling the Laurino Plaintiffs to produce documents in response to Requests for Production numbers 26 through 44, and the parties have set forth their arguments pertaining to each of the requests in their joint statement.[3] The Court will first outline the parties' arguments generally applicable to all document requests before turning each of the specific requests.

### A. The Parties' Arguments Regarding Compelling Production

1. <u>Defendant's Arguments in Favor of Compelling Production</u>

Defendant argues that the requested documents are not protected by the privilege against self-incrimination as Supreme Court precedent is clear that "a person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because

---

[3] The Court notes that Defendant's motion filed prior to the filing of the Joint Statement only specified the motion concerned Requests for Production numbers 26 through 33. (ECF No. 29.) Nonetheless, given the parties have fully briefed their respective positions regarding the Requests for Production numbers 26 through 44, the last section of the Laurino Plaintiff's portion of the Joint Statement ends at RFP 43, however, the arguments applicable to RFP 42 and 43 are germane to RFP 43. The Laurino Plaintiffs noted no objection to this issue in the Joint Statement, the Court finds it appropriate at this time to rule on the merits of compelling production of Requests for Production numbers 26 through 44.

the creation of those documents was not 'compelled' within the meaning" of the Fifth Amendment, Hubbell, 530 U.S. at 35-36. (J.S. at 3.) Defendant emphasizes that the Supreme Court has specifically held that providing handwriting exemplars does not implicate the Fifth Amendment privilege, Gilbert, 388 U.S. at 266–67. (J.S. at 3.) Defendant also argues that when the existence of the documents themselves is not in question, the act of production does not have a testimonial aspect to it, Fisher, 425 U.S. at 411. (J.S. at 3-4.)

Defendant briefly responds to the Laurino Plaintiffs' other objections, including that the requests relate to irrelevant issues and are vague and ambiguous, stating these objections "entirely lack merit." (J.S. at 4.) Here, Defendant argues the Court has previously held information concerning the July 25 Letter and the May 21 Letter is relevant to issues in this case and is within the scope of discovery permitted by the Federal Rules of Civil Procedure. (Id.)[4] Defendant also states that there is no serious question concerning what each document request seeks to obtain. (J.S. at 4.)

2. The Laurino Plaintiffs' Arguments Against Production

The Laurino Plaintiffs first highlight that despite the post office employee's admission at a deposition that the motor vehicle accident which caused the Decedent's death was the employee's fault,[5] and eyewitness testimony that the Decedent could not have avoided the accident, Defendant continues to deny liability, and is now pursuing an aggressive position that the Laurino Plaintiffs lied about the handwritten letters. (J.S. at 7.) The Laurino Plaintiffs highlight that the documents were submitted as part of the state court probate proceedings, they were not timely challenged by the Jurado Plaintiffs, and now the Jurado Plaintiffs are collaborating with Defendant to undo the state court proceedings and trying to get the wrongful

---

[4] In the Court's October 8, 2019 order granting modification of the scheduling order, the Court stated that "[b]ased on the conflicting deposition testimony concerning the provenance of the letters, the Court finds that further discovery directed at the question of who wrote the July 25 Letter and the May 21 Letter is highly relevant to the Defendant's ability to defend in this action," particularly as to damages. (ECF No. 28 at 11.)

[5] Defendant objects to this statement, arguing the Laurino Plaintiffs have mischaracterized the record as nobody ever asked the employee at the deposition if the accident was her fault. (J.S. at 6.) The employee's deposition is not attached to the Joint Statement; however, the Court agrees with Defendant that this line of argument is irrelevant to the present motion as the documents are relevant to the potential damages, not determining fault or liability for the accident.

death claims of the Laurino Plaintiffs dismissed. The Laurino Plaintiffs state that in furtherance of this goal, the Jurado Plaintiffs and Defendant "have collaborated in the retention of a handwriting expert and continue to collaborate in trying to demonstrate that documents these plaintiffs claim were written by their father were not." (J.S. at 7.) The Laurino Plaintiffs then state that this dispute arose from Defendant requesting production of the Decedent's will, and after what was produced, the handwritten documents are now the "focus of the United States' fishing expedition." (Id.) They further argue "[t]he entire focus of this discovery dispute has **nothing** at all to do with anything relevant to the liability or damages in this action," and state the Laurino Plaintiffs have repeatedly took the position, and will stipulate, that the writings will not be offered by them at trial, and thus to the extent the writings might bolster their claims of a close relationship with the Decedent such documents will not be introduced, and the only purpose of the discovery sought is to obtain additional documentation in support of a claim that the Laurino Plaintiffs committed perjury. (Id.)[6]

Next, the Laurino Plaintiffs argue Defendant has offered no discussion affirming that the documents already obtained are inadequate for expert handwriting analysis, and emphasize that during written discovery and the deposition of Maricela Laurino, the Laurino Plaintiffs produced both the handwritten letter and living will of the Decedent that was previously filed in the state probate matter. (J.S. at 8.) At the deposition of Yvette Jurado, a Laurino Plaintiff, counsel for the Jurado Plaintiffs provided three cards with writing from the Laurino Plaintiffs and that of the Decedent. (Id.) Thus, the Laurino Plaintiffs argue that there is no expert declaration stating more documents are needed for handwriting analysis, and that the Court is asked to assume such without a showing by the movant. (Id.)

As to the Fifth Amendment, the Laurino Plaintiffs argue that the relevant inquiry does not

---

[6] In response to the Laurino Plaintiffs' argument that the Defendant and Jurado Plaintiffs are in "collaboration" to affect the outcome of the state probate proceeding, Defendant states the argument is without merit as the United States is not a party to the probate proceeding, United States has retained its own handwriting expert, and is conducting its own inquiry into the disputed documents connected to this litigation. (J.S. at 6.) The Court agrees with Defendant and finds this line of argument from the Laurino Plaintiffs to be unpersuasive and not relevant to the specific objections to the requests for production, which the Court will address in turn below. The Court has previously found the issues surrounding the authorship of these handwritten letters to be relevant to the issue of damages, and the Laurino Plaintiffs' proffer that they will not produce such documents at trial does not change this analysis at this point in discovery.

pertain to the contents of the document itself, but it is rather the very act of production which may have a compelled testimonial aspect to it, and thus the privilege is applicable as the act of producing the documents has communicative aspects. (J.S. at 8-9.) The Laurino Plaintiffs contend that because Defendant is attempting establish potential perjury in this matter, the very acts of finding, assembling, and producing the requested documents is communicative conduct making the production subject to the Fifth Amendment's right against self-incrimination. (J.S. at 9.)

Finally, the Laurino Plaintiffs argue that Defendant attempts to get around the privilege by claiming the requested documents were broadly and generically discussed during depositions of the Laurino Plaintiffs, however, with the exception of a limited number of documents, most documents are not clearly identified, and would thus require the Laurino Plaintiffs to find identify, and verify under the oath that the documents are accurate. (J.S. at 9.)

**B.      The Court's Rulings on the Specific Requests for Production**

Having set forth the arguments applicable to the requests generally, the Court now turns to ruling on the specific requests for production, which the parties' Joint Statement combined into groups where related.

1.      Requests for Production Numbers 26 and 27

**Request No. 26**: Produce for inspection the original of the handwritten letter dated July 25, 2015, attached hereto as Attachment A, and marked as Exhibit 8 during the depositions of Plaintiffs that occurred on September 23 and September 24, 2019.

**Request No. 27**: Produce for inspection the original of the handwritten letter dated May 21, 2016, attached hereto as Attachment B, and marked as Exhibit 9 during the depositions of Plaintiffs that occurred on September 23 and September 24, 2019.

**The Parties' Arguments**: Defendant argues the parties already know these documents exist and are in the possession, custody, or control of the Laurino Plaintiffs; the Laurino Plaintiffs testified about their existence at the depositions and produced copies of them; the Supreme Court held handwriting samples do not implicate the Fifth Amendment, Gilbert, 388 U.S. at 266-67; and producing these documents will not implicitly communicate a statement of

fact and therefore the Fifth Amendment does not apply. (J.S. at 4.) The Laurino Plaintiffs state that the original documents were filed in the probate matter in state court, and by requiring them to submit copies here would require them to make a testimonial act of verifying the exhibits in violation of their Fifth Amendment rights; the exhibits are in state probate court, and if admissible, could be admitted by a foundation of judicial notice, and to require the plaintiffs to provide and verify the documents would be unnecessary, vexatious, and oppressive. (J.S. at 9.)

**The Court's Ruling**: The content of the documents does not implicate the Fifth Amendment as the documents were not created under compulsion by the government. Doe, 465 U.S. at 610. The Court finds the act of production here does not testify to the existence, possession, or authenticity of the documents in question. Baltimore City, 493 U.S. at 555. The existence and location of the documents is essentially a foregone conclusion as the government has established with reasonable particularity that the documents exist, and that the responding party possesses them. Fisher, 425 U.S. at 411; In re Grand Jury, 383 F.3d at 910. The documents can be independently authenticated without the use of any responding parties' testimonial act of production. In re Grand Jury, 383 F.3d at 912-13.

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 26 and 27 is **GRANTED**.

2.      Requests for Production Numbers 28 and 29

**Request No. 28**: Produce for inspection the original of any notebook which contains or previously contained the handwritten letter dated July 25, 2015, attached hereto as Attachment A, and marked as Exhibit 8 during the depositions of Plaintiffs that occurred on September 23 and September 24, 2019.

**Request No. 29**: Produce for inspection the original of any notebook which contains or previously contained the handwritten letter dated May 21, 2016, attached hereto as Attachment B, and marked as Exhibit 9 during the depositions of Plaintiffs that occurred on September 23 and September 24, 2019.

**The Parties' Arguments**: Defendant argues that like the letters, the existence of the notebooks is not in dispute as Plaintiffs Maricela Laurino and Yvette Jurado testified about the

notebooks in deposition, and Defendant points to deposition testimony from Maricela Laurino stating her sister Yvette found the May 21 Letter in one of the notebooks (Ex. 3, Laurino Dep. 64:6-7, ECF No. 30-3), and Yvette Jurado testified that she found the May 21 Letter in a green spiral book in late June of 2016, and testified she still has the notebook at home, (Ex. 4, Yvette Jurado Dep. 61:24-62:21, 79:23-80:1, ECF No. 30-4).[7]  (J.S. at 4.)  Defendant again argues compelled production of handwriting samples does not implicate the Fifth Amendment, Gilbert, 388 U.S. at 266-67, and because the requested notebook is indisputably in existence and in the possession of Yvette Jurado, allowing inspection will not communicate any statements of fact. (J.S. at 4-5.)  Plaintiff argues that just because some plaintiffs stated they obtained the letters from "otherwise undescribed notebooks of unknown origins" does not make the notebooks clearly identifiable and locatable, and would require the Laurino Plaintiffs to find all responsive notebooks, make a determination whether they are responsive, and declare the notebooks are in the Decedent's handwriting, which are testimonial acts and cannot be compelled.  (J.S. at 9-10.)

**The Court's Ruling**: The content of the documents does not implicate the Fifth Amendment as the documents were not created under compulsion by the government.  Doe, 465 U.S. at 610.  The Court finds the act of production here does not testify to the existence, possession, or authenticity of the documents in question.  Baltimore City, 493 U.S. at 555.  The existence and location of the documents is essentially a foregone conclusion as the government has established with reasonable particularity that the documents exist, and that the responding party possesses them.  Fisher, 425 U.S. at 411; In re Grand Jury, 383 F.3d at 910.  The documents can be independently authenticated without the use of any responding parties' testimonial act of production.  In re Grand Jury, 383 F.3d at 912-13.  Producing the notebooks will not require the producing parties to make any declaration verifying that the notebooks are in fact in the Decedent's handwriting, but rather only requires production of the notebook or notebooks from which the previously produced letters were obtained from, to the best of the responding parties' knowledge.

---

[7]  From the Court's review of the cited deposition testimony, it is unclear if both letters were contained in the same notebook discussed by the deponents.

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 28 and 29 is **GRANTED**.

3. <u>Requests for Production Numbers 30 and 31</u>

**Request No. 30**: Produce all documents containing or reflecting the handwriting of decedent in your possession, including without limitation any journals, letters, cards, financial records, bank records, court records of any kind, vehicle records, drivers licenses, probate records, real estate records, checks, employment records, applications of any kind, or any other documents that contain decedent's handwriting.

**Request No. 31**: Produce all documents containing or reflecting the signature of decedent in your possession, including without limitation any journals, letters, cards, financial records, bank records, court records of any kind, vehicle records, drivers licenses, probate records, real estate records, checks, employment records, applications of any kind, or any other documents that contain decedent's signature.

**The Parties' Arguments**: Defendant argues that: (1) like with other documents, there is no dispute that the Laurino Plaintiffs have at least some of these documents, as both Maricela Laurino and Yvette Jurado testified at deposition that the Decedent would write in journals (Laurino Dep. 61:17-18; 63:9-11; Jurado Dep. 59:15-16, 60:8-9, 61:25-62:3), and Yvette Jurado testified she still has the journals at home (Jurado Dep. 79:23-80:1); (2) production of handwriting samples does not implicate the Fifth Amendment, <u>Gilbert</u>, 388 U.S. at 266-67, and here the samples are for the handwriting of the Decedent and not the Laurino Plaintiffs, and (3) the production of the documents will not communicate any statement of fact not already known. (J.S. at 5.) The Laurino Plaintiffs argue this would require gathering and declaring under oath that a compilation of documents is verified to be in the Decedent's handwriting, and are testimonial acts protected under the Fifth Amendment. (J.S. at 10.)

**<u>The Court's Ruling</u>**: The content of the documents does not implicate the Fifth Amendment as the documents were not created by the witness under compulsion by the government. <u>Doe</u>, 465 U.S. at 610. Whether the act of production here testifies to the existence, possession, or authenticity of the documents in question is a closer question then the above

1    requests, given the broader nature of the requests at issue.  Nonetheless, the totality of the facts

2    fails to demonstrate that the act of production is "both 'testimonial' and 'incriminating' for

3    purposes of applying the Fifth Amendment."  Fisher, 425 U.S. at 410.  While the Defendant has

4    not identified and indicated the location of each requested type of document, it is not required to

5    do so.  In re Grand Jury, 383 F.3d at 910 ("The government was not required to have actual

6    knowledge of the existence and location of each and every responsive document; the government

7    was required, however, to establish the existence of the documents sought and Doe's possession

8    of them with 'reasonable particularity' before the existence and possession of the documents

9    could be considered a foregone conclusion and production therefore would not be testimonial.").

10        The Defendant has established with reasonable particularity that these documents exist

11   and are the type of documents possessed by the responding parties.  Fisher, 425 U.S. at 411

12   (where the responding party "adds little or nothing to the sum total of the Government's

13   information by conceding that he in fact has the papers," the Fifth Amendment is not

14   implicated); In re Grand Jury, 383 F.3d at 910.  Yvette Jurado testified that the black bag in

15   which she found the May 21 Letter contained a number of other documents, including insurance

16   documents (Jurado Dep. 62:24-64:7), and testified she managed the Decedent's bank accounts

17   and has access to bank statements (Jurado Dep. 26:2-19).  This goes beyond generalized

18   knowledge rejected by the Ninth Circuit.  In re Grand Jury, 383 F.3d at 911 ("The argument that

19   a salesman such as Doe will always possess business records describing or memorializing

20   meetings or prices does not establish the reasonably particular knowledge required.").

21        Further, the circumstances do not reach to the level described in Hubbell, where "[i]t

22   [was] apparent from the text of the subpoena itself that the prosecutor needed respondent's

23   assistance both to identify potential sources of information and to produce those sources," and

24   "[g]iven the breadth of the description of the 11 categories of documents called for by the

25   subpoena, the collection and production of the materials demanded was tantamount to answering

26   a series of interrogatories asking a witness to disclose the existence and location of particular

27   documents fitting certain broad descriptions."  Hubbell, 530 U.S. at 41-42 (finding "[t]he

28   assembly of literally hundreds of pages of material in response to a request for 'any and all

documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to' an individual or members of his family during a 3-year period . . . [was] the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition."); see also In re Syncor ERISA Litig., 229 F.R.D. 636, 649 (C.D. Cal. 2005) (holding that even production of a privilege log would implicate the Fifth Amendment because listing responsive documents may incriminate defendant Fu by forcing him to admit that the documents exist, are in his possession or control, and are authentic, and the document requests explicitly sought "documents concerning Syncor's overseas sales of radiopharmaceutical products and services, including but not limited to the foreign bribery scheme conducted in connection with such sales," "documents concerning 'bribes,' 'kickbacks,' 'gifts or other financial support paid,'" and documents "concerning Syncor's violations of the Foreign Corrupt Practices Act.").

While the Laurino Plaintiffs argue Defendant is asking for the Laurino Plaintiffs to essentially testify as to the accuracy of the responsive documents, the Court disagrees as the responding parties only need to verify to the best of their knowledge that they believe these documents are responsive to the document requests, not as to the veracity or content of any of the documents. See Fisher, 425 U.S. at 412-13 ("As for the possibility that responding to the subpoena would authenticate the workpapers, production would express nothing more than the tax payer's belief that the papers are those described in the subpoena [and] [t]he taxpayer would be no more competent to authenticate the accountant's workpapers or reports by producing them than he would be to authenticate them if testifying orally, [as] [t]he taxpayer did not prepare the papers and could not vouch for their accuracy."); In re Grand Jury Proceedings, 40 F.3d at 962 (agreeing with lower court that "the only factual statement that will be made will be the bank's "implicit declaration, by its act of production in response to the subpoena, that *it* believes the accounts to be petitioner's.") (internal quotation marks and citation omitted). The documents can be independently authenticated without the use of any responding parties' testimonial act of production, whether through handwriting analysis or by independent corroboration such as through other parties or third-party financial institutions or other companies. In re Grand Jury,

383 F.3d at 912-13.

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 30 and 31 is **GRANTED**.

### 4. Requests for Production Numbers 32 and 33

**Request No. 32**: Produce the original and all copies of any bank or other financial records of decedent in your possession.

**Request No. 33**: Produce the original and all copies of any current or previous will of decedent.

**The Parties' Arguments**: Defendant argues the location of these papers is not in dispute and thus does not implicate the Fifth Amendment, Fisher, 425 U.S. at 411, as Yvette Jurado testified that the black bag in which she found the May 21 Letter contained a number of other documents, including insurance documents (Jurado Dep. 62:24-64:7), testified she managed the Decedent's bank accounts and has access to bank statements (Jurado Dep. 26:2-19), and thus production will not communicate any additional statements of fact that implicate the Laurino Plaintiffs' Fifth Amendment rights. (J.S. at 5.) The Laurino Plaintiffs again argue Defendant is asking for the Laurino Plaintiffs to "essentially testify as to the accuracy of said documents," and notes the documents were generated and maintained by third parties, such as banks and insurance companies, and the will was prepared by a third-party, the Decedent, and argue this is a request for testimonial acts, and that the financial documents are equally available to Defendant from sources that are deemed reliable and thus there is no reason to have the Laurino Plaintiffs testify to the accuracy and completeness of such records under oath. The Laurino Plaintiffs further argue this request is burdensome and oppressive, seeking information equally available through a subpoena.

**The Court's Ruling**:

The content of the documents does not implicate the Fifth Amendment as the documents were not created by the witness under compulsion by the government. Doe, 465 U.S. at 610. The totality of the facts fails to demonstrate that the act of production is "both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment." Fisher, 425 U.S. at 410. The

Defendant has established with reasonable particularity that these documents exist and are the type of documents possessed by the responding parties. Id. at 411; In re Grand Jury, 383 F.3d at 910. Yvette Jurado testified that the black bag in which she found the May 21 Letter contained a number of other documents, including insurance documents (Jurado Dep. 62:24-64:7), and testified she managed the Decedent's bank accounts and has access to bank statements (Jurado Dep. 26:2-19). This goes beyond generalized knowledge rejected by the Ninth Circuit. In re Grand Jury, 383 F.3d at 911.

Further, the circumstances do not reach to the level described in Hubbell. 530 U.S. at 41-42 (finding "[t]he assembly of literally hundreds of pages of material in response to a request for 'any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to' an individual or members of his family during a 3-year period . . . [was] the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition."); see also In re Syncor ERISA Litig., 229 F.R.D. at 649 (holding that even production of a privilege log would implicate the Fifth Amendment because listing responsive documents may incriminate defendant Fu by forcing him to admit that the documents exist, are in his possession or control, and are authentic, and the document requests explicitly sought "documents concerning Syncor's overseas sales of radiopharmaceutical products and services, including but not limited to the foreign bribery scheme conducted in connection with such sales," "documents concerning 'bribes,' 'kickbacks,' 'gifts or other financial support paid," and documents "concerning Syncor's violations of the Foreign Corrupt Practices Act.").

While the Laurino Plaintiffs argue Defendant is asking for the Laurino Plaintiffs to essentially testify as to the accuracy of the responsive documents, the Court disagrees as the responding parties only need to verify to the best of their knowledge that they believe these documents are responsive to the document requests, not as to the veracity or content of any of the documents. See Fisher, 425 U.S. at 412-13 In re Grand Jury Proceedings, 40 F.3d at 962. The documents can be independently authenticated without the use of any responding parties' testimonial act of production, whether through handwriting analysis or by independent

corroboration such as through other parties or third-party financial institutions or other companies. In re Grand Jury, 383 F.3d at 912-13.

The Court also disagrees with Plaintiff's argument that these documents are equally available to Defendant.

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 32 and 33 is **GRANTED**.

5. <u>Requests for Production Numbers 34 through 41</u>

**Request No. 34**: Produce for inspection at least ten documents containing the handwriting of Marisela Laurino.

**Request No. 35**: Produce for inspection at least ten documents containing the signature of Marisela Laurino.

**Request No. 36**: Produce for inspection at least ten documents containing the handwriting of Yvette Jurado.

**Request No. 37**: Produce for inspection at least ten documents containing the signature of Yvette Jurado.

**Request No. 38**: Produce for inspection at least ten documents containing the handwriting of Irma Jurado.

**Request No. 39**: Produce for inspection at least ten documents containing the signature of Irma Jurado.

**Request No. 40**: Produce for inspection at least ten documents containing the handwriting of Vivian Jurado.

**Request No. 41**: Produce for inspection at least ten documents containing the signature of Vivian Jurado.

**The Parties' Arguments**: Defendant argues that these requests are proper as the Supreme Court has held a compelled handwriting exemplar does not implicate the Fifth Amendment, <u>Gilbert</u>, 388 U.S. at 266-67. (J.S. at 5-6.) The Laurino Plaintiffs argue that Defendant is "asking that these plaintiffs provide documents that, while not containing statements that are incriminating, have the sole purpose of providing the United States with

information the United States hopes will be incriminating." (J.S. at 10.)

**The Court's Ruling**: The Supreme Court has squarely held that production of handwriting or signature exemplars does not implicate the privilege against self-incrimination under the Fifth Amendment. See, e.g., Gilbert, 388 U.S. at 266-67; Fisher, 425 U.S. at 408; In re Grand Jury Proceedings, 40 F.3d at 962 (recognizing that providing a handwriting sample is not a testimonial act protected under the Fifth Amendment).

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 34, 35, 36, 37, 38, 39, 40, and 41 is **GRANTED**.

6.     Requests for Production Numbers 42, 43, and 44

**Request No. 42**: Produce all documents that you have produced or allowed to be inspected by any other party in this litigation.

**Request No. 43**: Produce all documents that you have produced or relied upon in *In re Estate of Manual H. Jurado*, Fresno Superior Court No. 18CEPR00397.

**Request No. 44**: Produce all documents that any other party has produced to you in *In re Estate of Manual H. Jurado*, Fresno Superior Court No. 18CEPR00397.

**The Parties' Arguments**: Defendant argues these documents, which have already been produced or inspected in litigation, do not contain any testimonial aspect, and any potential privileges have been waived by production in litigation. (J.S. at 6.) As for RFP number 42, the Laurino Plaintiffs state that all such documents have been produced in this matter to all parties and no known additional documents are available. (J.S. at 10-11.) As for RFP number 43, the Laurino Plaintiffs argue they have objected to the extent such documents are covered by work product privilege or the attorney client privilege in the probate matter, and further state that all documents known to exist in the probate matter are in the state probate file, and requiring the plaintiffs to produce such documents is burdensome, oppressive, and the documents are equally available to both parties.

**The Court's Ruling**: As for RFP number 42, if the Laurino Plaintiffs have in fact already produced all such documents to Defendant, they must so state in their discovery response, rather than simply providing an objection on other grounds. The Court notes that in the copy of the

responses provided in the Joint Statement, the response to RFP number 42 appears to simply be a blanket objection copied and pasted, and in fact mistakenly has the heading from response number 28 inserted in that location. (ECF No. 30-2 at 14.)

While the Laurino Plaintiffs state they have objected to RFP number 43 on the basis of attorney-client privilege and the work product doctrine, the responses in the record only reflect objections stating the requests are broad, burdensome, and oppressive, in addition to violating privacy rights and the Fifth Amendment privilege. (ECF No. 30-2 at 15-16.) In fact, the Laurino Plaintiffs did not raise any attorney-client privilege or work product objection in their discovery responses to requests numbers 42, 43, and 44, (ECF No. 30-2 at 14-16). See Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981) ("Generally, in the absence of an extension of time or good cause, the failure to object . . . constitutes a waiver of any objection . . . even of an objection that the information sought is privileged."). The Court agrees with Defendant that attorney-client privilege or work product privilege may have been waived for documents produced in the state matter. Nonetheless, the Court notes that Request for Production number 43 also refers to documents relied on by the responding party, and not just documents already produced. Defendant has not argued a blanket waiver as to these documents relied upon, and further, the full discovery responses are not attached to the Joint Statement and thus the Court is not aware if there were general objections invoking such privileges.

Generally, the attorney-client privilege protects confidential communications between an attorney and a client when made for the purpose of obtaining legal advice. United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011); Rogers v. Giurbino, 288 F.R.D. 469, 480 (S.D. Cal. 2012). "The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.' " Richey, 632 F.3d at 566 (quoting United States v. Graf, 610 F.3d 1148, 1158 (9th Cir. 2010)). "To qualify for work product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or for that other party's

representative.' " Rogers, 288 F.R.D. at 480 (quoting Richey, 632 F.3d at 567). "When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Thus, to the extent the responding parties believe in good faith that attorney-client privilege or work product privilege remains attached to documents responsive to RFP number 43, the respond parties may withhold such documents subject to production of a privilege log or other appropriate measures. See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005); USF Ins. Co. v. Smith's Food & Drug Ctr., Inc., No. 2:10-CV-001513-RLH-L, 2011 WL 2457655, at *3 (D. Nev. June 16, 2011) ("Rather, waiver of the attorney-client privilege is a harsh sanction reserved generally for unjustified, inexcusable, or bad faith conduct, and a waiver may be unnecessary where other remedies are available.").

As to the argument that the state court documents are equally available to the other party, Defendant was not a party to that action and the argument is unavailing.

Accordingly, Defendant's motion to compel responses to Defendant's Request for Production numbers 42, 43, and 44 is **GRANTED**. However, to the extent that Request for Production number 43 calls for the production of materials potentially covered by attorney-client privilege or the attorney work product doctrine, the responding parties may invoke such privilege subject to production of a privilege log or other appropriate measures.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, Defendant's motion to compel Plaintiffs Maricela Laurino, Irma Jurado, Vivian Jurado, and Yvette Jurado, to produce documents responsive to Defendant's Requests for Production is GRANTED. (ECF No. 29.) Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs Maricela Laurino, Irma Jurado, Vivian Jurado, and Yvette Jurado shall serve further responses and provide documents responsive to Defendant's Requests for Production numbers 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and 44, within **thirty (30) days** of entry of this order;

2. Defendant's motion to compel responses to interrogatories numbers 10 and 11 is WITHDRAWN without prejudice; and

3. No sanctions shall be imposed against any party.

IT IS SO ORDERED.

Dated: __**November 29, 2019**__

_____
UNITED STATES MAGISTRATE JUDGE